| CIVIL ACTION COVER SHEET | DOCKET NO.(S)<br>04-16660D | Trial Court of Massachusetts<br>Superior Court Department<br>County:___ Essex |
|---|---|---|

| PLAINTIFF(S)<br><br>Clement Woghiren | DEFENDANT(S)<br><br>Wyeth |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>John P. Tocci, Esq.<br>Merson & Lee, P.C. Suite 400<br>171 Milk Street  Boston, MA 02109<br><br>Board of Bar Overseers number:  562139 | ATTORNEY  (if known) |

## Origin code and track designation

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial)  (F)
- [ ] 3. F03 Retransfer to Sup.Ct.,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial)  (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)    TRACK | IS THIS A JURY CASE? |
|---|---|---|
| B22 | Employment Discrimination   ( F ) | ( x )Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
2.  Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
3.  Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
4.  Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
5.  Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
                                                                    Subtotal $. . . . . . . . . . . .
B.  Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
C.  Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
D.  Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
E.  Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . 100,000+ . . . .
F.  Other documented items of damages (describe)
           Benefits                                                 $ . TBD . . . . . . . .
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

     Severe emotional distress
                                                                    $ . TBD . . . . . . . .
                                                             TOTAL $. 100,000+ . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

**A TRUE COPY, ATTEST**

*[signature]*
**DEPUTY ASS'T. CLERK**

FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

SEP - 7 2004

*[signature]* TODAY . . . . . . . .
CLERK

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record    *[signature]*                    DATE: 9-3-04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

**Commonwealth of Massachusetts**
**County of Essex**
**The Superior Court**

CIVIL DOCKET# **ESCV2004-01666-D**

RE:    **Woghiren v Wyeth et al**

TO:John F Tocci, Esquire
   Merson & Lee
   171 Milk Street
   Suite 400
   Boston, MA 02109-

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 12/06/2004 |
| Response to the complaint filed (also see MRCP 12) | 02/04/2005 |
| All motions under MRCP 12, 19, and 20 filed | 02/04/2005 |
| All motions under MRCP 15 filed | 02/04/2005 |
| All discovery requests and depositions completed | 07/04/2005 |
| All motions under MRCP 56 served and heard | 08/03/2005 |
| Final pre-trial conference held and firm trial date set | 09/02/2005 |
| Case disposed | 11/01/2005 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session D sitting in **CtRm 2 (Lawrence) at Essex Superior Court.**

Dated: 10/20/2004

Thomas H. Driscoll Jr.
Clerk of the Courts

BY: Edward D. Sullivan
Assistant Clerk

Location: CtRm 2 (Lawrence)
Telephone: (978) 687-7463

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 496087 inidoc01 melnickp

A TRUE COPY, ATTEST

DEPUTY ASS'T. CLERK

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO.** 4-11660 D

|   |   |
|---|---|
| **CLEMENT WOGHIREN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **WYETH,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**FILED**
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

SEP - 7 2004

*Thomas A. Driscoll Jr.*
**CLERK**

### COMPLAINT

1.    In this action the plaintiff Clement Woghiren (the "Plaintiff" or "Dr. Woghiren"),

a Principal Scientist/Manager for Wyeth's subdivision, Wyeth BioPharma (the "Defendant" or

"Wyeth"), seeks damages for the Defendant's illegal, discriminatory and retaliatory actions.

Specifically, the Defendant has engaged in a race-based and concerted campaign to strip Dr.

Woghiren of his authority and responsibilities at Wyeth and, after he complained about Wyeth's

discriminatory conduct, illegally retaliated against Dr. Woghiren by concocting "performance"

issues designed to support an otherwise unsupportable demotion and termination.

### THE PARTIES

2.    Clement Woghiren is an adult Massachusetts resident who resides in North

Andover, Middlesex County, Massachusetts.  Dr. Woghiren has over 22 years of experience in

the pharmaceutical industry, most with major pharmaceutical companies such as Johnson &

Johnson, Schering-Plough and Enzon.  He has worked for Wyeth since 1996 and has been a

Principal Scientist/Manager for Wyeth since 2001.

A TRUE COPY, ATTEST
*Pamela F. Hildrich*
DEPUTY ASS'T. CLERK

3.     Wyeth is a Delaware corporation headquartered at Five Giralda Farms, Madison, NJ, 07940.  Wyeth Pharmaceuticals is a division of Wyeth.  Wyeth BioPharma is a division of Wyeth Pharmaceuticals and is located in Massachusetts at One Burtt Road, Andover, Middlesex County, MA  01810.

## THE FACTS

4.     Defendant is in the business of the development, manufacture and commercialization of biopharmaceutical products, including protein therapeutics.

5.     Dr. Woghiren has been a Wyeth employee since December 1996, and has worked as a Principal Scientist/Manager for Wyeth since November 1, 2001.

6.     Dr. Woghiren, until fairly recently, served as a Manager with Wyeth's Quality Control Laboratories, Analytical Science & Technology ("AST") Group.

7.     Prior to serving as a Manager in Wyeth's AST Group, Dr. Woghiren had been recognized for various accomplishments while with Wyeth including, but in no way limited to: his nomination in 1997, for the Wyeth/Ayerst exceptional achievement award – the highest scientific award granted by Wyeth; the management of stability studies of numerous Wyeth products and the drafting of justification product expiration dating in regulatory submission documents, for which he was nominated and received two awards relating to this work -- for the Mylotarg analytical team and the Minesse MRP rapid response team -- from Wyeth President, Dr. Patrick Gage.

7.     From November 2001 through January 2003 Dr. Woghiren directly reported to Robert Corcoran and, after Dr. Corcoran's departure, to Peri Ozker.

8.     During this period, Dr. Woghiren directly supervised three AST sub-groups which included fifteen scientists and three group leaders.

2

9.    Dr. Woghiren received positive reviews for his work.

10.    In fact, his 2002 performance evaluation reveals that Wyeth rated him a 4 (exceeds expectations) or 5 (outstanding) on a scale of 1-5 in almost all evaluative categories.

11.    His overall performance rating for 2002 was a 4 (exceeds expectations).

12.    His performance rating reflected, in large part, his responsibility and success in building the Raw Material Verification Group within AST and the hiring of all staff, and the acquisition of laboratory facilities and equipment for the new group.

13.    Dr. Woghiren's other noteworthy accomplishments during the course of 2002 include his leadership role in preparing all AST labs for the Food and Drug Administration's pre-approval inspection of BMP-2, which proved quite successful as AST received no negative citation.

14.    Dr. Woghiren also led the company's efforts to meet several FDA pre-approval commitments which were performed in a timely manner.

15.    Dr. Woghiren's performance led Dr. Corcoran to recommend that Dr. Woghiren be appointed to the vacant AST Associate Director position in 2002.

16.    Dr. Woghiren applied for the open AST Associate Director position in the autumn of 2002.

17.    Given his generally positive reviews and his supervision of most of the AST sub-groups and staff, he reasonably assumed that he was a leading candidate for the position.

18.    Despite Dr. Woghiren's accomplishments, Wyeth looked outside of the company to fill its Associate Director position and hired Dr. Denise Maratea, who commenced her Wyeth employment in January, 2003.

3

19.    Prior to Dr. Maratea joining Wyeth, the company decided to upgrade the position to Director level.

20.    Dr. Maratea immediately engaged in a campaign of unwarranted harassment against Dr. Woghiren, which was designed to force him to resign his Wyeth employment.

21.    At first, her criticisms, although curious, seemed innocuous. In February 2003, she reprimanded Dr. Woghiren because she observed an AST employee utilizing the Internet. She failed to ascertain whether such use was business-related, but, nonetheless, felt compelled to imply that it was not. She utilized this opportunity to inform Dr. Woghiren that he is responsible for the actions of his employees, including their misconduct.

22.    Dr. Maratea also belittled Dr. Woghiren's accomplishments, often crediting his subordinates for his successful efforts.

23.    Within a few months of obtaining her mantle of power, Dr. Maratea's criticism of Dr. Woghiren took a more malevolent tone and she seemed intent on "putting him in his place."

24.    In the spring of 2003, Dr. Maratea informed Dr. Woghiren that she did not approve of a monthly report format he utilized. When Dr. Woghiren asked her for a copy of a monthly report she had prepared to ascertain the new report style she had requested, Dr. Maratea lashed out at Dr. Woghiren, accusing him of impropriety in requesting reports that only Director-level employees should access.

25.    She also ordered Dr. Woghiren to cease utilizing the title "Principal Scientist/Manager" despite the fact that this *was* his title.

26.    Dr. Maratea insisted that *she* was the manager of the group and that *he* was a Principal Scientist only.

4

27.     Dr. Maratea had no response when Dr. Woghiren pointed out that she allowed a white group head of the same level, but with fewer direct reports, to continue to utilize the "Manager" title.

28.     Dr. Maratea and Wyeth also exhibited animus to other minority employees including employees of African descent.

29.     For example, Dr. Maratea belittled a compliance project devised by Dr. Woghiren and a subordinate group head, who is of African descent, despite the fact that the project was praised in other quarters of the company.

30.     Dr. Woghiren, at the end of 2003, drafted performance evaluations for all of his subordinates, including a group head of African descent. Dr. Maratea accepted all of Dr. Woghiren's recommended evaluations for his charges with the sole exception of the group head of African descent.

31.     Dr. Maratea ordered Dr. Woghiren to reduce the evaluative score of the group head of African descent. She also approved a written warning of this employee without consulting with Dr. Woghiren, his supervisor, and without providing a verbal warning to this employee, contrary to Wyeth policy.

32.     When Dr. Woghiren inquired as to why he had not been consulted regarding the employee discipline, Dr. Maratea replied that, in her estimation, the subordinates viewed the group head of African descent and Dr. Woghiren "as one and the same."

33.     Dr. Maratea ordered Dr. Woghiren, despite his supervisory responsibilities, to refrain from contacting any of the subordinate employees regarding the matter or to conduct any investigation into the matter.

34.    Wyeth has also distributed larger bonuses to white employees than to non-white employees, despite similar evaluative ratings and status.

35.    Wyeth and Dr. Maratea intensified their efforts to force Dr. Woghiren to resign his employment.

36.    Wyeth "reorganized" the AST Group in early 2004 and in doing so, stripped Dr. Woghiren of managerial or supervisory authority.

37.    Despite the fact that Dr. Woghiren met all of his assigned goals from 2003, Dr. Maratea assigned Dr. Woghiren duties only relating to technology transfers – primarily consisting of reviewing, editing and updating previously drafted scientific reports.

38.    While Dr. Woghiren was previously responsible for the final technology transfer product only while his subordinates previously had performed the editing work.

39.    In February 2004, shortly after Wyeth demoted Dr. Woghiren, Dr. Woghiren expressed his dismay and disappointment with his substantial demotion.

40.    During the course of 2004, Dr. Maratea continued to belittle Dr. Woghiren's accomplishments and to ascribe his successes to his subordinates.

41.    In the aftermath of the "reorganization" Dr. Woghiren made it clear that he would not be forced out of the company in this manner.

42.    Upon realizing that her effort had not produced the desired results, Dr. Maratea and Wyeth, on April 22, 2004, placed Dr. Woghiren on a "Performance Improvement Plan" (a "PIP").

43.    Wyeth and Dr. Maratea placed Dr. Woghiren on a PIP for alleged substandard performance in his new duties and responsibilities, to which he was assigned less than sixty days prior.

44.    While PIP's are frequently used by employers to attempt to improve employee performance, the PIP was employed by Wyeth to hide its illegal and discriminatory conduct.

45.    Wyeth specifically placed Dr. Woghiren on a PIP to create the false appearance that Wyeth is helping Dr. Woghiren succeed.

46.    Dr. Woghiren refused to allow himself to be manipulated in this manner and filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (the "MCAD") on April 23, 2004.

47.    Both prior to and subsequent to the filing of his MCAD action, Wyeth set Dr. Woghiren up to fail.

48.    For example, Wyeth assigned Dr. Woghiren to several new purportedly "urgent" projects and counseled him when he did not meet pressing deadlines.

49.    During the course of a month-long medical leave of absence – during which Dr. Maratea assumed responsibility for meeting the "pressing" deadlines for the "urgent" projects – neither Dr. Maratea nor any other Wyeth employee performed any task relating to the purportedly urgent projects and Dr. Woghiren continued where he left off prior to his leave of absence.

50.    Wyeth has retaliated against Dr. Woghiren for asserting his rights by, among other things, informing him that he is not acceptably performing pursuant to the PIP.

51.    Dr. Woghiren fully expects Wyeth to discharge him for failing to meet stated "goals".

52.    Indeed, Wyeth has indicated that it intends to terminate Dr. Woghiren's employment shortly.

7

53.     Wyeth's discriminatory and retaliatory treatment of Dr. Woghiren has caused him
great anxiety and depression.

54.     He took a leave of absence from the workplace to attend to his health issues from
July 14, 2004 through August 17, 2004.

## COUNT I
### (Discrimination)

55.     Plaintiff realleges and incorporates by reference paragraphs 1 through 54 of the
Complaint.

56.     Dr. Woghiren has timely satisfied all statutory prerequisites to filing this suit
pursuant to M.G.L. c. 151B.

57.     Wyeth discriminated against Dr. Woghiren because of his race, national origin
and/or background in violation of M.G.L. c. 151B.

58.     As a result of the Defendant's discriminatory acts, Dr. Woghiren has suffered lost
income and benefits, damage to his professional reputation, lost professional opportunities and
other losses including, but not limited to emotional distress and mental anguish.

## COUNT II
### (Retaliation)

59.     Plaintiff realleges and incorporates by reference paragraphs 1 through 58 of the
Complaint.

60.     Dr. Woghiren has timely satisfied all statutory prerequisites to filing this suit
pursuant to M.G.L. c. 151B.

61.     Wyeth discriminated against Dr. Woghiren because of his race, national origin
and/or background in violation of M.G.L. c. 151B and retaliated against Dr. Woghiren for
exercising his rights in seeking redress for the Defendant's discriminatory acts.

62.    As a result of the Defendant's retaliatory acts, Dr. Woghiren has suffered lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses including, but not limited to emotional distress and mental anguish.

**WHEREFORE**, the plaintiff Clement Woghiren prays that this Court:

(a)    Enter judgment against the Defendant, Wyeth and in favor of the Plaintiff, Clement Woghiren on Count I of this Complaint for Mr. Woghiren's lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses including, but not limited to emotional distress and mental anguish, his reasonable attorneys fees and costs of litigation;

(b)    Enter judgment against the Defendant, Wyeth and in favor of the Plaintiff, Clement Woghiren on Count II of this Complaint for Mr. Woghiren's lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses including, but not limited to emotional distress and mental anguish, his reasonable attorneys fees and costs of litigation;

(c)    Award the Plaintiff his costs, expenses and attorneys' fees;

(d)    Grant such other and further relief as appropriate.

Respectfully Submitted,

CLEMENT WOGHIREN.

By his attorneys,

Merson & Lee, PC

_____
John F. Tocci, Esq. BBO# 562139
Merson & Lee, P.C.
171 Milk Street, Suite 400
Boston, MA 02109
(617)399-7800

September 3, 2004

## COMMONWEALTH OF MASSACHUSETTS

**ESSEX, ss.**

**SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 04-01666-D**

|  |  |
|---|---|
| **CLEMENT WOGHIREN,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **WYETH,** | ) |
|  | ) |
| **Defendant.** | ) |

## AFFIDAVIT OF SERVICE

Pursuant to Mass. R. Civ. P. 4(e) and (f), the affiant, John F. Tocci, Esq., hereby swears and affirms as follows.

1.    My name is John F. Tocci, Esq. and I am an adult Massachusetts resident.

2.    I am an officer of the court and counsel to the plaintiff in the above-captioned matter, Clement Woghiren (the "Plaintiff").

3    I hereby certify that Kenneth O'Brien, Esq. the General Counsel of Wyeth, the defendant in the above-referenced matter (the "Defendant"), has accepted service of process on behalf of the defendant of the Summons and Complaint filed by the Plaintiff.

4.    I certify that a copy of the Summons and Complaint was served upon Mr. O'Brien on or before **September 13, 2004**.

FILED
IN THE SU
FOR TH

SEP 2

Thomas
CLERK

A TRUE COPY, ATTEST
DEPUTY ASS'T. CLERK

Respectfully Submitted,

CLEMENT WOGHIREN.

By his attorneys,

Merson & Lee, PC

John F. Tocci, Esq. BBO# 562139
Merson & Lee, P.C.
171 Milk Street, Suite 400
Boston, MA 02109
(617)399-7800

September 20, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by hand/mail on _9-30-04_

2

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 04-01666-D

CLEMENT WOGHIREN, )
)
)
Plaintiff, )
)
v. )
)
WYETH, and )
WYETH BIOPHARMA, )
)
Defendant. )
)

## AMENDED COMPLAINT

1.    In this action the plaintiff Clement Woghiren (the "Plaintiff" or "Dr. Woghiren"), a Principal Scientist/Manager for Wyeth's subdivision, Wyeth BioPharma, seeks damages for the Defendant's illegal, discriminatory and retaliatory actions. Specifically, the Defendant has engaged in a race-based and concerted campaign to strip Dr. Woghiren of his authority and responsibilities at Wyeth and, after he complained about Wyeth's discriminatory conduct, illegally retaliated against Dr. Woghiren by concocting "performance" issues designed to support an otherwise unsupportable demotion and termination.

## THE PARTIES

2.    Clement Woghiren is an adult Massachusetts resident who resides in North Andover, Middlesex County, Massachusetts. Dr. Woghiren has over 22 years of experience in the pharmaceutical industry, most with major pharmaceutical companies such as Johnson & Johnson, Schering-Plough and Enzon. He has worked for Wyeth since 1996 and has been a Principal Scientist/Manager for Wyeth BioPharma since 2001.



A TRUE COPY, ATTEST

DEPUTY ASS'T. CLERK

3.    Wyeth is a Delaware corporation headquartered at Five Giralda Farms, Madison, NJ, 07940. Wyeth Pharmaceuticals is a division of Wyeth.

4.    Wyeth BioPharma ("Wyeth BioPharma") is a division of Wyeth Pharmaceuticals and is located in Massachusetts at One Burtt Road, Andover, Middlesex County, MA 01810. Wyeth and Wyeth BioPharma shall be collectively referred to herein as "Wyeth" or the "Defendant".

## THE FACTS

5.    Defendant is in the business of the development, manufacture and commercialization of biopharmaceutical products, including protein therapeutics.

6.    Dr. Woghiren has been a Wyeth employee since December 1996, and has worked as a Principal Scientist/Manager for Wyeth since November 1, 2001.

7.    Dr. Woghiren, until fairly recently, served as a Manager with Wyeth BioPharma's Quality Control Laboratories, Analytical Science & Technology ("AST") Group.

8.    Prior to serving as a Manager in Wyeth BioPharma's AST Group, Dr. Woghiren had been recognized for various accomplishments while with Wyeth including, but in no way limited to his nomination in 1997, for the Wyeth/Ayerst Exceptional Achievement Award – the highest scientific award granted by Wyeth.

9.    He was also nominated for and received awards from former Wyeth President, Dr. Patrick Gage, relating to the management of stability studies of numerous Wyeth products and the drafting of justification product expiration dating in regulatory submission documents -- for the Mylotarg Analytical Team and the Minesse MRP Rapid Response Team.

10.    From November 2001 through January 2003 Dr. Woghiren directly reported to Robert Corcoran and, after Dr. Corcoran's departure, to Peri Ozker.

2

11.    During this period, Dr. Woghiren directly supervised three AST sub-groups which included fifteen scientists and three group leaders.

12.    Dr. Woghiren received positive reviews for his work.

13.    In fact, his 2002 performance evaluation reveals that Wyeth rated him a 4 (exceeds expectations) or 5 (outstanding) on a scale of 1-5 in almost all evaluative categories.

14.    His overall performance rating for 2002 was a 4 (exceeds expectations).

15.    His performance rating reflected, in large part, his responsibility and success in building the Raw Material Verification Group within AST and the hiring of all staff, and the acquisition of laboratory facilities and equipment for the new group.

16.    Dr. Woghiren's other noteworthy accomplishments during the course of 2002 include his leadership role in preparing all AST labs for the Food and Drug Administration's pre-approval inspection of BMP-2, which proved quite successful as AST received no negative citation.

17.    Dr. Woghiren also led the company's efforts to meet several FDA pre-approval commitments which were performed in a timely manner.

18.    Dr. Woghiren's performance led Dr. Corcoran to recommend that Dr. Woghiren be appointed to the vacant AST Associate Director position in 2002.

19.    Dr. Woghiren applied for the open AST Associate Director position in the autumn of 2002.

20.    Given his generally positive reviews and his supervision of most of the AST sub-groups and staff, he reasonably assumed that he was a leading candidate for the position.

21.    Despite Dr. Woghiren's accomplishments, Wyeth looked outside of the company to fill its Associate Director position and hired Dr. Denise Maratea, who commenced her Wyeth employment in January, 2003.

3

22.    Prior to Dr. Maratea joining Wyeth, the company decided to upgrade the position to Director level.

23.    Dr. Maratea immediately engaged in a campaign of unwarranted harassment against Dr. Woghiren, which was designed to force him to resign his Wyeth employment.

24.    At first, her criticisms, although curious, seemed innocuous. In February 2003, she reprimanded Dr. Woghiren because she observed an AST employee utilizing the Internet. She failed to ascertain whether such use was business-related, but, nonetheless, felt compelled to imply that it was not. She utilized this opportunity to inform Dr. Woghiren that he is responsible for the actions of his employees, including their misconduct.

25.    Dr. Maratea also belittled Dr. Woghiren's accomplishments, often crediting his subordinates for his successful efforts.

26.    Within a few months of obtaining her mantle of power, Dr. Maratea's criticism of Dr. Woghiren took a more malevolent tone and she seemed intent on "putting him in his place."

27.    In the spring of 2003, Dr. Maratea informed Dr. Woghiren that she did not approve of a monthly report format he utilized. When Dr. Woghiren asked her for a copy of a monthly report she had prepared to ascertain the new report style she had requested, Dr. Maratea lashed out at Dr. Woghiren, accusing him of impropriety in requesting reports that only Director-level employees should access.

28.    She also ordered Dr. Woghiren to cease utilizing the title "Principal Scientist/Manager" despite the fact that this *was* his title.

29.    Dr. Maratea insisted that *she* was the manager of the group and that *he* was a Principal Scientist only.

4

30.    Dr. Maratea had no response when Dr. Woghiren pointed out that she allowed a white Group Head of the same level, but with fewer direct reports, to continue to utilize the "Manager" title.

31.    Dr. Maratea and Wyeth also exhibited animus to other minority employees including employees of African descent.

32.    For example, Dr. Maratea belittled a compliance project devised by Dr. Woghiren and a subordinate Group Head, who is of African descent, despite the fact that the project was praised in other quarters of the company.

33.    Dr. Woghiren, at the end of 2003, drafted performance evaluations for all of his subordinates, including a Group Head of African descent. Dr. Maratea accepted all of Dr. Woghiren's recommended evaluations for his charges with the sole exception of the Group Head of African descent.

34.    Dr. Maratea ordered Dr. Woghiren to reduce the evaluative score of the Group Head of African descent. She also approved a written warning of this employee without consulting with Dr. Woghiren, his supervisor, and without providing a verbal warning to this employee, contrary to Wyeth policy.

35.    When Dr. Woghiren inquired as to why he had not been consulted regarding the employee discipline, Dr. Maratea replied that, in her estimation, the subordinates viewed the Group Head of African descent and Dr. Woghiren "as one and the same."

36.    Dr. Maratea ordered Dr. Woghiren, despite his supervisory responsibilities, to refrain from contacting any of the subordinate employees regarding the matter or to conduct any investigation into the matter.

37.    Wyeth has also distributed larger bonuses to white employees than to non-white employees, despite similar evaluative ratings and status.

5

38.    Wyeth and Dr. Maratea intensified their efforts to force Dr. Woghiren to resign his employment in 2004.

39.    Wyeth "reorganized" the AST Group in early 2004 and in doing so, stripped Dr. Woghiren of managerial and supervisory authority.

40.    Despite the fact that Dr. Woghiren met all of his assigned goals from 2003, Dr. Maratea assigned Dr. Woghiren duties only relating to technology transfers – primarily consisting of reviewing, editing and updating previously drafted scientific reports.

41.    Dr. Woghiren previously was responsible for only the final technology transfer product, while his subordinates previously had performed the editing work.

42.    In February 2004, shortly after Wyeth demoted Dr. Woghiren, Dr. Woghiren expressed his dismay and disappointment with his substantial demotion.

43.    During the course of 2004, Dr. Maratea continued to belittle Dr. Woghiren's accomplishments and to ascribe his successes to his subordinates.

44.    In the aftermath of the "reorganization" Dr. Woghiren made it clear that he would not be forced out of the company in this manner.

45.    Upon realizing that her effort had not produced the desired results, Dr. Maratea and Wyeth, on April 22, 2004, placed Dr. Woghiren on a "Performance Improvement Plan" (a "PIP").

46.    Wyeth and Dr. Maratea placed Dr. Woghiren on a PIP for alleged substandard performance in his new duties and responsibilities, to which he was assigned less than sixty days prior.

47.    While PIP's are frequently used by employers to attempt to improve employee performance, the PIP was employed by Wyeth to hide its illegal and discriminatory conduct.

6

49.    Wyeth specifically placed Dr. Woghiren on a PIP to create the false appearance that Wyeth is helping Dr. Woghiren succeed.

50.    Dr. Woghiren refused to allow himself to be manipulated in this manner and filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (the "MCAD") on April 23, 2004.

51.    Both prior to and subsequent to the filing of his MCAD action, Wyeth set Dr. Woghiren up to fail in meeting the criteria for successful completion of the PIP.

52.    For example, Wyeth assigned Dr. Woghiren to several new purportedly "urgent" projects and criticized him when he did not meet allegedly pressing deadlines.

53.    During the course of a month-long medical leave of absence – during which Dr. Maratea assumed responsibility for meeting the "pressing" deadlines for the "urgent" projects – neither Dr. Maratea nor any other Wyeth employee performed any task relating to the purportedly urgent projects and Dr. Woghiren continued where he left off prior to his leave of absence.

54.    Wyeth has retaliated against Dr. Woghiren for asserting his rights by, among other things, informing him that he is not acceptably performing pursuant to the PIP and fabricate grounds for his termination.

55.    Wyeth's discriminatory and retaliatory treatment of Dr. Woghiren has caused him great anxiety and depression.

56.    Dr. Woghiren took a leave of absence from the workplace to attend to his health issues from July 14, 2004 through August 17, 2004.

57.    Wyeth discharged Dr. Woghiren on September 24, 2004.

## COUNT I
### (Discrimination)

58.    Plaintiff realleges and incorporates by reference paragraphs 1 through 57 of the Complaint.

59.    Dr. Woghiren has timely satisfied all statutory prerequisites to filing this suit pursuant to M.G.L. c. 151B and Title VII of the Civil Rights Act of 1964, as amended.

60.    Wyeth discriminated against Dr. Woghiren because of his race, national origin and/or background in violation of M.G.L. c. 151B and Title VII of the Civil Rights Act of 1964, as amended.

61.    As a result of the Defendant's discriminatory acts, Dr. Woghiren has suffered lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses including, but not limited to emotional distress and mental anguish.

## COUNT II
### (Retaliation)

62.    Plaintiff realleges and incorporates by reference paragraphs 1 through 61 of the Complaint.

63.    Dr. Woghiren has timely satisfied all statutory prerequisites to filing this suit pursuant to M.G.L. c. 151B and Title VII of the Civil Rights Act of 1964, as amended.

64.    Wyeth discriminated against Dr. Woghiren because of his race, national origin and/or background in violation of M.G.L. c. 151B and retaliated against Dr. Woghiren for exercising his rights in seeking redress for the Defendant's discriminatory acts.

65.    As a result of the Defendant's retaliatory acts, Dr. Woghiren has suffered lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses including, but not limited to emotional distress and mental anguish.

**WHEREFORE**, the plaintiff Clement Woghiren prays that this Court:

(a)    Enter judgment against the Defendant, Wyeth and in favor of the Plaintiff, Clement Woghiren on Count I of this Complaint for Mr. Woghiren's lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses including, but not limited to emotional distress and mental anguish, his reasonable attorneys fees and costs of litigation;

(b)    Enter judgment against the Defendant, Wyeth and in favor of the Plaintiff, Clement Woghiren on Count II of this Complaint for Mr. Woghiren's lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses including, but not limited to emotional distress and mental anguish, his reasonable attorneys fees and costs of litigation;

(c)    Award the Plaintiff his costs, expenses and attorneys' fees;

(d)    Grant such other and further relief as appropriate.


Respectfully Submitted,

CLEMENT WOGHIREN

By his attorneys,

Merson & Lee, PC

John F. Tocci, Esq. BBO# 562139
Merson & Lee, P.C.
171 Milk Street, Suite 400
Boston, MA 02109
(617)399-7800

October 4, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on _10-4-04_

9

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                     SUPERIOR COURT DEPARTMENT

| | |
|---|---|
| CLEMENT WOGHIREN, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 04-01666-D |
| WYETH, And | ) |
| WYETH BIOPHARMA, | ) |
| Defendants. | ) |

## NOTICE OF APPEARANCE

Please take notice that Michael A. Fitzhugh and Edward P. O'Leary, of the law firm

Fitzhugh, Parker & Alvaro LLP, hereby enter their appearance on behalf of the defendants,

Wyeth and Wyeth Biopharma, in the above captioned lawsuit.

**WYETH AND WYETH BIOPHARMA,**
By Their Attorneys,

Michael A. Fitzhugh
BBO #169700
Edward P. O'Leary
BBO #551932
**FITZHUGH PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

A TRUE COPY, ATTEST

DEPUTY ASS'T CLERK

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2004 I have served the above *Notice of Appearance* upon all counsel of record listed below by regular mail, postage prepaid.

John F. Tocci, Esq.
Merson & Lee, P.C.
171 Milk Street, Suite 400
Boston, MA 02109

_____
Angelina Velazquez

2

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                          SUPERIOR COURT DEPARTMENT

CLEMENT WOGHIREN,                )
                                 )
        Plaintiff,               )
                                 )
v.                               )
                                 )          CIVIL ACTION NO.  04-01666-D
WYETH, And                       )
WYETH BIOPHARMA,                 )
                                 )
        Defendants.              )

## NOTICE OF FILING NOTICE OF REMOVAL

The defendants, Wyeth and Wyeth Biopharma, hereby give notice that they have this day

served a Notice of Removal to the United States District Court for the District of Massachusetts

pursuant to 28 U.S.C. §1446(a). A copy of the defendant's Notice of Removal is attached hereto.

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446, the filing of

this Notice removes this action to the Federal Court, and this Court may "proceed no further

unless and until the case is remanded." 28 U.S.C. § 1446(d).

                                    **WYETH AND WYETH BIOPHARMA,**
                                    By Their Attorneys,


                                    _____
                                    Michael A. Fitzhugh
                                    BBO #169700
                                    Edward P. O'Leary
                                    BBO #551932
                                    **FITZHUGH PARKER & ALVARO LLP**
                                    155 Federal Street, Suite 1700
                                    Boston, MA 02110-1727
                                    (617) 695-2330

A TRUE COPY, ATTEST

_____
DEPUTY ASS'T. CLERK

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2004 I have served the above *Notice of Filing Notice of Removal* upon all counsel of record listed below by regular mail, postage prepaid.

John F. Tocci, Esq.
Merson & Lee, P.C.
171 Milk Street, Suite 400
Boston, MA 02109

Angelina Velazquez

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CLEMENT WOGHIREN,
 Plaintiff,

v.

WYETH, And
WYETH BIOPHARMA,
 Defendants.

)
)
)
)
)
)
)
)
)
)
)

Docket No.

04 - 12148 WG

FILED
IN CLERKS OFFICE

2004 OCT 12 P 3: 41

U.S. DISTRICT COURT
DISTRICT OF MASS

I HEREBY ATTEST AND CERTIFY ON 10-12-04
THAT THE FOREGOING DOCUMENT IS A FULL, TRUE
AND CORRECT COPY OF THE ORIGINAL ON FILE
IN MY OFFICE AND IN MY LEGAL CUSTODY.

CLERK, U.S. DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BY

## NOTICE OF REMOVAL

TO THE JUDGES OF THE UNITED STATED DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS:

The defendants, Wyeth and Wyeth Biopharma ("Defendants"), file this Petition for Removal pursuant to 28 U.S.C. §1446(a), and respectfully submit that:

1. On or about October 8, 2004, Defendants received a Summons, together with the Amended Complaint in the matter entitled Clement Woghiren v. Wyeth and Wyeth Biopharma, Essex County Superior Court, Civil Action No. 04-01666-D. True, accurate and complete copies of the Summons and Complaint are attached hereto as Exhibit "A." The Summons and Complaint constitute all process, pleadings and orders served upon the defendants in this matter to date.

2. Removal to the United States District Court for the District of Massachusetts in Boston is appropriate as: (1) in accordance with 28 U.S.C. §1441(b), the United States District Court has original jurisdiction over the action; and (2) the United States District Court for the District of Massachusetts, Eastern Section embraces the place, i.e., Essex County, where the action is pending. 28 U.S.C. §1441(a).

3. Original jurisdiction is based upon diversity of the parties and an amount in controversy in excess of $75,000.00 as set forth in 28 U.S.C. § 1332 (a)(1) and (b), respectively. Clement Woghiren, is a resident of Middlesex County, Commonwealth of Massachusetts. The sole proper defendant and entity amenable to suit is Wyeth, which a corporation duly

organized under the laws of the State of Delaware and headquartered at Madison, New Jersey. The amount in controversy exceeds $75,000, inasmuch as the plaintiff has alleged in the Complaint that he has suffered damages for wrongful discharge and retaliation in violation of G.L. ch. 151B, § 1 *et seq.*, for, *inter alia*, lost income and benefits, damage to his professional reputation, lost professional opportunities and other losses, emotional distress and mental anguish, attorney's fees and costs due to "Discrimination based upon his race, national origin and/or background. " *See* Amended Complaint, attached hereto as "Exhibit A," ¶¶ 60, 64.

4.    An alternate basis for this Court's jurisdiction exists pursuant to 28 U.S.C. § 1441 (b), in that the plaintiff has pleaded a claim for wrongful discharge under Title VII of the federal civil rights act, as amended.   *See* Amended Complaint attached hereto as "Exhibit A," ¶ 60.

5.    This Notice of Removal is being filed within the time period required by law in accordance with 28  U.S.C. § 1446 (b).

6.    Promptly after the filing of this Notice of Removal, a copy of the Notice will be filed with the Clerk of Courts for the Essex County Superior Court, and all adverse parties will receive written notice of the filing of this Notice of Removal.

**WHEREFORE**, the Defendants pray that this action be removed from the Essex County Superior Court to the United States District Court for the District of Massachusetts.

**WYETH AND WYETH BIOPHARMA,**
By Their Attorneys,

Michael A. Fitzhugh, BBO #169700
Edward P. O'Leary, BBO# 551932
**FITZHUGH PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

2

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2004 I have served the above *Notice of Removal* upon all counsel of record listed below by regular mail, postage prepaid.

John F. Tocci, Esq.
Merson & Lee, P.C.
171 Milk Street, Suite 400
Boston, MA 02109

Angelina Velazquez

3

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# **ESCV2004-01666**

Woghiren

vs.

Wyeth et al

---

## ORDER OF TRANSFER (remand)

Pursuant to Massachusetts General Laws Chapter 231, Section 102C, as amended, and in accordance with Superior Court Rule 29, the above referenced case is

ORDER transferring/remanding case to United States District (Patrick Riley, Justice)

Dated at Lawrence, Massachusetts this 20th day of October, 2004.

Thomas H. Driscoll Jr.,
Clerk of the Courts

BY:................................................
Clerk

Telephone: (978) 687-7463

A TRUE COPY, ATTEST

DEPUTY ASS'T. CLERK

cvdremandc_1.wpd 504798 ortracas melnickp

Case 1:04-cv-12148-WGY     Document 3     Filed 10/28/2004     Page 31 of 32

**Commonwealth of Massachusetts**
**ESSEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## ESCV2004-01666
### Woghiren v Wyeth et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 09/07/2004 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 10/15/2004 | **Session** | D - Civil-CtRm 2 (Lawrence) | | |
| **Origin** | 1 | **Case Type** | B22 - Employment Discrimination | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 12/06/2004 | **Answer** | 02/04/2005 | **Rule12/19/20** | 02/04/2005 |
| **Rule 15** | 02/04/2005 | **Discovery** | 07/04/2005 | **Rule 56** | 08/03/2005 |
| **Final PTC** | 09/02/2005 | **Disposition** | 11/01/2005 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Clement Woghiren
North Andover, MA 01845
Active 09/07/2004

**Private Counsel 562139**
John F Tocci
Merson & Lee
171 Milk Street
Suite 400
Boston, MA 02109-
Phone: 617-399-7800
Fax: 617-399-7801
Active 09/07/2004 Notify

**Private Counsel 169700**
Michael A Fitzhugh
Fitzhugh Parker & Alvaro
155 Federal Street
Suite 1700
Boston, MA 02110-1727
Phone: 617-695-2330
Fax: 617-695-2335
Active 10/20/2004 Notify

**Defendant**
Wyeth
One Burtt Road
Andover, MA 01810
Service pending 09/07/2004

**Defendant**
Wyeth Biopharma
Service pending 10/05/2004

A TRUE COPY, ATTEST

*[signature]*
**DEPUTY ASST. CLERK**

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 09/07/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 09/07/2004 | | Origin 1, Type B22, Track F. |
| 09/21/2004 | 2.0 | Affidavit of compliance by John F Tocci with certificate of service |

MAS-20031124     Case 1:04-cv-12148-WGY     Document 3     Filed 10/28/2004     Page 32 of 32     10/20/2004
melnickp                                    Commonwealth of Massachusetts                              10:44 AM
                                                ESSEX SUPERIOR COURT
                                                    Case Summary
                                                    Civil Docket

### ESCV2004-01666
### Woghiren v Wyeth et al

| Date | Paper | Text |
|------|-------|------|
| | 2.0 | of complaint re: Wyeth |
| 10/05/2004 | 3.0 | Amended complaint of Clement Woghiren |
| 10/15/2004 | 4.0 | Atty Michael A Fitzhugh's notice of appearance for Wyeth and Wyeth Biopharma |
| 10/15/2004 | 5.0 | Certified copy of Notice for Removal to the United States District Court filed by Wyeth and Wyeth Biopharma |
| 10/15/2004 | 6.0 | ORDER transferring/remanding case to United States District (Patrick Riley, Justice) |
| 10/15/2004 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**