UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CLEMENT WOGHIREN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-12148 WGY |
| | ) | |
| WYETH and WYETH BIOPHARMA, | ) | |
| Defendants. | ) | |
| | ) | |

## JOINT PRE-TRIAL MEMORANDUM

1.  **Concise Summary of the Evidence that will be Offered by the Plaintiff and Defendant with Respect to Liability and Damages**

    A.  **Dr. Woghiren's Summary of Evidence**

    Dr. Woghiren anticipates offering the following evidence at trial:

    Dr. Clement Woghiren, at the time of his termination by Wyeth effective September 24, 2004, had worked in the pharmaceutical industry for over 22 years, most with major pharmaceutical companies such as Johnson & Johnson, Schering-Plough and Enzon. He commenced his Wyeth employment in 1996 and became a Principal Scientist/Manager for Wyeth BioPharma in 2001. He received positive reviews while he worked at Wyeth's Pearl River, New York site, where he hired and supervised two scientists during 2000 and 2001. Dr. Woghiren received awards and accolades for his work while working at Wyeth's Pearl River, New York site.

    During 2001 Wyeth hired Dr. Woghiren as a Manager with Wyeth BioPharma's Quality Control Laboratories, Analytical Science & Technology ("AST") Group, located in Andover, Massachusetts. He was given management responsibility over three of AST's five groups and fifteen scientists. He directly reported, for several months, to Robert Corcoran – AST's Associate Director -- who praised Dr. Woghiren's work and skills. Dr. Corcoran resigned from Wyeth effective January, 2002 and suggested that Dr. Wogiren be named his successor.

    After Dr. Corcoran's resignation, Dr. Woghiren directly reported to AST's Director, Peri Ozker. During the course of 2002 Dr. Ozker continued to praise Dr. Woghiren and provided positive feedback and evaluation of his skills and achievements. Ms. Ozker completed a written evaluation of Dr. Woghiren's performance during calendar year 2002 in which she rated Dr.

Woghiren as "exceeding expectations" in eight of twelve evaluative categories and as having performed at an "outstanding" level in the remaining four categories.

During the course of the summer and fall of 2002, Wyeth commenced a search for a new AST Associate Director. While Wyeth often promoted internal, primarily white, scientists, Wyeth, in this case, decided to search externally for an Associate Director. Wyeth ultimately hired Dr. Denise Maratea as AST Director commencing in January 2003.

Dr. Woghiren continued to perform at or above acceptable levels during the course of 2003. Dr. Maratea, however, became increasingly critical of Dr. Woghiren leveling unwarranted criticism at him, belittling his accomplishments and giving credit for his achievements, and the achievements of another AST black scientist, to other scientists who were not of African descent. She and Wyeth treated Dr. Woghiren in a disparate manner from white scientists. For example, Dr. Maratea insisted that Dr. Woghiren refrain from using the title "Principal Scientist/Manager" despite the fact that he was, indeed, the manager of numerous scientists and had been for almost two years. Dr. Maratea allowed a Caucasian scientist with fewer direct reports to continue to utilize the title "Principal Scientist/ Manager".

Dr. Maratea, in late 2003, stripped Dr. Woghiren of all managerial duties, instead assigning him menial tasks formerly performed by his subordinates. Dr. Maratea placed Dr. Woghiren on a Performance Improvement Plan (a "PIP") in April 2004 which was designed to do little more than construct a record to support the termination of Dr. Woghiren, which termination took place in September, 2004.

As a result of his termination, Dr. Woghiren was unemployed for approximately nine months and suffered lost back pay damages as a result. He also suffered substantial emotional distress which included anxiety, depression and digestive ailments during the summer of 2004 and thereafter. His emotional distress stemmed not only from the indignity of his job loss, but also because he is a primary support source for his 14 year-old son in New Jersey and for family in Nigeria.

### B.     Wyeth's Summary of Evidence

Wyeth expects the evidence to demonstrate the following:

Wyeth anticipates that the evidence will show that upon arriving at Wyeth in January of 2003, Dr. Maratea realized that the AS&T department was the subject of numerous complaints from others at Wyeth, and was not performing well internally. Early in 2004, based upon the persistence of these complaints and her own observations, she reorganized the AS&T group. Contrary to Dr. Woghiren's contentions, he was not "demoted" and he had not previously been a "manager" of any staff. Thus, the salient change with respect to his status was that he no longer supervised anyone, whereas previously, three people had reported to him.

The evidence will show that Dr. Maratea observed and documented specific and repeated instances of Dr. Woghiren's performance deficiencies, which caused her to give him an evaluation of "3" for "meets expectations" for the calendar year 2003. Thereafter, she continued

to observe numerous performance deficiencies, verified by other colleagues of Dr. Woghiren, that led her to place him on the Performance Improvement Plan.  He did not respond to the guidance and objectives rendered in the plan, but instead, grew increasingly insubordinate and intransigent in refusing to address and correct the issues she identified.  His termination was purely as a result of these deficiencies, and nothing done by Wyeth or Dr. Maratea was a pretext for unlawful discrimination.  Dr. Woghiren's race played no role whatsoever in any of the events occurring during the relevant time period.

**2.     Statement of Facts Established by Pleadings, Admissions or Stipulations**

A statement of the parties' agreed upon facts is attached hereto.

**3.     Contested Issues of Fact**

**A.     Dr. Woghiren's Contested Issues of Fact**

Dr. Woghiren believes the following to be substantial factual issues contested by Wyeth.

Dr. Woghiren contends that he was an AST "manager" as he was charged with management responsibility over three of AST's five groups and fifteen scientists.

Dr. Woghiren contends that Robert Corcoran was the Associate Director and Dr. Woghiren's direct supervisor and, upon his resignation from Wyeth effective January, 2002 Dr. Corcoran suggested that Dr. Woghiren be named his successor.  Dr. Woghiren, based upon Peri Ozker's positive feedback and the recommendation of Dr. Corcoran, expected to become the new AST Associate Director.

Dr. Woghiren contends and believes that Wyeth will dispute that while Wyeth often promoted internal, primarily white, scientists without resort to external posting, Wyeth, in this case, decided to search externally for an Associate Director.  Wyeth ultimately hired Dr. Denise Maratea as AST Director commencing in January 2003.

Dr. Woghiren contends that he performed his duties and responsibilities at or above acceptable levels during 2002 (and prior) and that he continued to perform his duties and responsibilities at or above acceptable levels during the course of 2003 and into 2004.  Dr. Maratea and Wyeth treated Dr. Woghiren in a disparate manner from white scientists during her tenure.  For example, Dr. Maratea insisted that Dr. Woghiren refrain from using the title "Principal Scientist/Manager" despite the fact that he was, indeed, the manager of numerous scientists and had been for almost two years.  Dr. Maratea allowed a Caucasian scientist with fewer direct reports to continue to utilize the title "Principal Scientist/ Manager".  She undermined Dr. Woghiren's authority and, when she managed a dispute with subordinate employees – bypassing Dr. Woghiren and their group head who is also black and of African descent -- she explained to Dr. Woghiren that the employees in that group viewed Dr. Woghiren and the group head of African descent "as one and the same".

3

Dr. Woghiren contends, and eblieves that Wyeth will dispute that Dr. Maratea stripped Dr. Woghiren of all managerial duties – thereby demoting him -- in late 2003, instead assigning him menial tasks formerly performed by his subordinates. Dr. Maratea placed Dr. Woghiren on a Performance Improvement Plan (a "PIP") in April 2004 which was designed to do little more than construct a record to support the termination of Dr. Woghiren, which termination took place in September, 2004.

Dr. Woghiren contends that Wyeth's and Dr. Maratea's justifications for stripping him of his managerial duties were pretextual as were their reasons for placing him on a PIP. He asserts that discrimination was a material ingredient in Wyeth's and Dr. Maratea's actions. He also asserts that retaliation for filing a discrimination claim was a material ingredient in Wyeth's ultimate termination decision. As a result of his termination, Dr. Woghiren was unemployed for approximately nine months and suffered lost back pay damages as a result. He also suffered substantial emotional distress.

    **B.**    **Wyeth's Contested Issues of Fact**

1)    Was Dr. Woghiren's treatment by Dr. Maratea or Wyeth motivated in whole or in part by any unlawful discriminatory animus.

**4.**    **Jurisdictional Questions**

The parties agree that this matter is before this Court on diversity jurisdiction and that there are no jurisdictional questions.

**5.**    **Questions Raised by Pending Motions**

There are no pending motions before the Court.

**6.**    **Issues of Law, Including Evidentiary Questions, Together with Supporting Authority**

    **A.**    **Dr. Woghiren's Issues of Law**

Dr. Woghiren has filed herewith and incorporates herein several Motions *in limine* in which he contends that certain documents offered by Wyeth constitute inadmissible hearsay and/or are unfairly prejudicial. The Motions *in limine* set forth the authority upon which Dr. Woghiren bases his objections. Dr. Woghiren also anticipates that Wyeth will object to documentary and testimonial evidence of his disparate treatment in contrast to the treatment of Caucasian scientists at Wyeth's QC labs. In particular, Dr. Woghiren contends that he should be allowed to introduce evidence that Wyeth tended to promote Caucasian QC scientists to management positions without following the procedures to which Dr. Woghiren was subjected as he pursued the position of AST Associate Director. He has also submitted a Motion *in limine* on this question and incorporates the same herein.

Dr. Woghiren anticipates that the parties may differ on the substantive law applicable to the case. Again, while the full extent of any dispute of law between the parties may become evident only upon the filing of proposed jury instructions, Dr. Woghiren addresses the following issues of law.

Dr. Woghiren has asserted claims of race discrimination and retaliation in his termination. He asserts that he may demonstrate his claim by circumstantial evidence, including evidence regarding a discriminatory atmosphere at Wyeth. United States Postal Service v. Aikens, 460 U.S. 711, 714 n.3 (1983) (Circumstantial evidence may support an inference of discrimination); Conway v. Electro Switch Corp., 825 F.2d 593, at 597 (1st Cir. 1987) (Circumstantial evidence of a "discriminatory atmosphere" is relevant to motive in considering a discrimination claim.).

While Dr. Woghiren does not assert a cause of action for Wyeth's failure to promote him to Associate Director of AST, he alleges that the failure to promote and the means by which Wyeth conducted the hiring process is evidence of discrimination. See Motion *in limine*.

Dr. Woghiren asserts that he was performing at or above acceptable levels at the time he was demoted (by being stripped of managerial responsibility in early 2004), placed on a PIP (in April 2004), and ultimately terminated. He therefore asserts that it is Wyeth's burden to demonstrate legitimate and non-discriminatory reasons for their adverse actions against him. In order to prevail, Dr. Woghiren need not prove that all of the reasons offered are not true. If he succeeds in showing that one or more of the reasons which Wyeth claimed it stripped him of managerial responsibilities, placed him on a PIP and terminated him are not the true reasons, that raises an inference that the real reason was discrimination and/or retaliation allowing the jury to find in his favor. Lipchitz v. Raytheon Co., 434 Mass. 493, 499, 506-507 (2001); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000); Wheelock College v. MCAD, 371 Mass. 130, 138 (1976). The jury must find that discrimination or retaliation was a material ingredient, but not the only ingredient, in the decision-making process. Chief Justice for Admin. & Mgt. v. MCAD, 439 Mass. 729, 735 (2003).

Finally, Dr. Woghiren anticipates a dispute regarding the deduction of unemployment benefits he received from any back pay award. He asserts that the collateral source rule, which has been applied in the employment context, precludes such a reduction. "A tortfeasor's liability to an injured person shall not be reduced by the amount of compensation received by the injured person pursuant to an insurance policy. . . . Commonly referred to as the 'collateral source rule,' the doctrine requires that 'the damages . . . must be paid by one who has caused the insured's disability. . . . It is based on the rationale that if there is to be a 'windfall,' such benefit should accrue to the injured party rather than to the wrongdoer." Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 182 (1984) rev denied, 395 Mass. 1103 (1985) (citations omitted) (Ruling that welfare benefits should not be deducted from back pay award to employment discrimination plaintiff); see also, Norton School Comm. V. MCAD, 63 Mass. App. Ct. 839, 848 (2005) (MCAD correctly declined to deduct unemployment benefits from back pay award).

Dr. Woghiren requests the right to file additional motions *in limine* as may be necessary and at times directed by the Court.

### B.     Wyeth's Issues of Law

Wyeth anticipates that Dr. Woghiren will challenge a certain memoranda generated by Ms. Stephanie Abrams that recorded her appraisal of Dr. Woghiren after she interviewed him for the Associate Director's position. Wyeth believes that this document is a business record within the meaning of FRE 803(6) and this Court's construction of that rule in *U. S. v. Ferber,* 966 F.Supp. 90 (D.Mass. 1997). Dr. Woghiren also objects to the introduction of the Performance Improvement Plan rendered by Dr. Maratea in April of 2004, which Wyeth contends is *per se* a business record. Also, Wyeth anticipates a challenge to the introduction of contemporaneous notes taken by Dr. Maratea that are her recorded recollections of her meetings with Dr. Woghiren, and which thus are both business records under FRE 803(6) and her recorded recollections within the ambit of FRE 803(5). Wyeth believes that Dr. Woghiren's objections to these documents are unfounded, and go to their weight, but not to their admissibility.

At this juncture, the parties are attempting to resolve their differing viewpoints on these documents, but if they cannot be resolved, Wyeth requests the right to file a motion *in limine* at such time before trial as this Court may direct.

### 7.     Any Requested Amendments to the Pleadings

The parties do not request any amendments to the pleadings.

### 8.     Any Additional Matters to Aid in the Disposition of the Action

Wyeth believes that the Court will have to make certain determinations as to the scope of the issues, because it contends that plaintiff is seeking to introduce evidence and issues that are not probative or relevant. Based upon deposition testimony by Dr. Woghiren and discussions between counsel, Wyeth believes that Dr. Woghiren will attempt to proffer testimony on a so-called "culture of resistance" at Wyeth, an amorphous concept that has nothing to do with his case. Similarly, while his failure to obtain the Associate Director's position is a significant event in his employment history, Wyeth believes that he may attempt to introduce it as evidence of discrimination, and this is improper. Any such claim is not presented in the pleadings, and would be time-barred by G.L. ch. 151B's 300 day statute of limitations set forth at Section 9. This is not a failure to promote case, but one that turns solely on the issue of his alleged wrongful termination.

At this juncture, the parties are attempting to resolve their differing viewpoints on this documents, but if they cannot be resolved, Wyeth requests the right to file a motion *in limine* at such time before trial as this Court may direct.

### 9.     Length of Trial

The parties agree that this case will be heard by a jury and anticipate the probable length of trial to be four full days.

**10.     Witnesses**

      **A.     Dr. Woghiren**

          1.     Clement Woghiren
                7070 Coffield Court,
                Cumming, GA 30041

          2.     Robert Corcoran
                Shire Pharmaceuticals
                (formerly Transkaryotic Therapies, Inc.)
                700 Main Street
                Cambridge, MA  02139

          3.     Pius Okeyo
                Wyeth Biopharma
                One Burtt Road
                Andover, MA  01810

          4.     Latosha Dixon
                Wyeth Biopharma
                One Burtt Road
                Andover, MA  01810

          5.     Isabelle Ricard
                Wyeth Biopharma
                One Burtt Road
                Andover, MA  01810

          6.     Peri Ozker
                Wyeth Biopharma
                One Burtt Road
                Andover, MA  01810

          7.     Christopher Pajak
                Wyeth Biopharma
                One Burtt Road
                Andover, MA  01810

          8.     Dee Furusa
                110 Skyline Drive
                Dracut, MA  01826

All witnesses are factual witnesses. Dr. Woghiren reserves the right to supplement this list prior to trial and in accordance with the law. Dr. Woghiren additionally reserves its right to call any witness named by Wyeth and to call rebuttal witnesses at the time of trial.

**B.	Wyeth**

Wyeth designates all of the above persons on the plaintiff's witness list, and in addition, the following persons as fact witnesses:

1.	Ms. Sharleen Miele
	Wyeth Biopharma
	One Burtt Road
	Andover, MA  01810

2.	Mr. David Holmes
	Wyeth Biopharma
	One Burtt Road
	Andover, MA  01810

3.	Ms. Hermi Catipon
	Wyeth Biopharma
	One Burtt Road
	Andover, MA  01810

4.	Ms. Lori St. Cyr
	Wyeth Biopharma
	One Burtt Road
	Andover, MA  01810

5.	Dr. Pratiksha Bhatnagar
	Wyeth Biopharma
	One Burtt Road
	Andover, MA  01810

6.	Ms. Stephanie Abrams
	Wyeth Biopharma
	One Burtt Road
	Andover, MA  01810

7.	Ms. Mary Stevens
	Wyeth Biopharma
	One Burtt Road
	Andover, MA  01810

8.	Dr. Thomas Porter
	Wyeth Biopharma

        One Burtt Road
        Andover, MA  01810

9.   Ms. Joanna Magazzu
     Wyeth Biopharma
     One Burtt Road
     Andover, MA  01810

10.   Ms. Joanne Flynn
      Wyeth Biopharma
      One Burtt Road
      Andover, MA  01810

11.   Ms. Susan Bossi
      Wyeth Biopharma
      One Burtt Road
      Andover, MA  01810

12.   Dr. Thomas Last
      Wyeth Biopharma
      One Burtt Road
      Andover, MA  01810

**11.**   **Proposed Exhibits**

The parties have appended hereto their proposed exhibit lists.

| CLEMENT WOGHIREN, | WYETH AND WYETH BIOPHARMA, |
|---|---|
| By his Attorney, | By Their Attorneys, |
| ____/S/ John F. Tocci_____ | ___/S/ Michael A. Fitzhugh_____ |
| John F. Tocci, Esq. | Michael A. Fitzhugh, Esq. |
| BBO# 562139 | BBO# 169700 |
| TOCCI, GOSS & LEE, PC | FITZHUGH, PARKER & ALVARO, LLP |
| 35 India Street, 5th Floor | 155 Federal Street, Suite 1700 |
| Boston, MA 02110 | Boston, MA 02110-1727 |
| (617) 542-6200 | (617) 695-2330 |

Dated: September 22, 2005