UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CLEMENT WOGHIREN,<br>　　　Plaintiff,<br><br>　　　v.<br><br>WYETH and WYETH BIOPHARMA,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)　CIVIL ACTION NO. 04-12148 WGY<br>)<br>)<br>)<br>) |

**WYETH AND WYETH BIOPHARMA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ADMIT CERTAIN CONTESTED DOCUMENTS**

The Defendants Wyeth and Wyeth BioPharma (collectively "Wyeth") hereby move the Court to admit into evidence certain disputed documents, which are fully described below. Wyeth contends that each of the documents constitutes either a business record, a recorded recollection or a present sense impression and are all exceptions to the hearsay rule.

**I.  HISTORY**

Dr. Woghiren began working for Wyeth on December 3, 1996 as a Principal Scientist I at Wyeth's Pearl River, New York facility in the Analytical Research and Development Department. On or around November 1, 2001, Dr. Woghiren transferred to Wyeth's Andover facility and began working as a Principal Scientist in the Quality Control Analytical Science and Technology Laboratory ("QC AS&T"). While at Andover, Dr. Woghiren worked with Zinma Khaw, a QC Analyst. Ms. Khaw left Wyeth's employ in June 2002. Pursuant to Wyeth's policy, Ms. Khaw completed a Confidential Exit Questionnaire prior to her departure.

Mr. Robert Corcoran, the Associate Director QC AS&T, was Dr. Woghiren's supervisor after he transferred to the Andover facility. In January 2002, Mr. Corcoran left Wyeth's employ. At Mr. Corcoran's departure, his former position was vacant. Dr. Woghiren and a number of candidates applied for the position. One of the applicants for the Associate Director QC AS&T position was Dr. Denise Maratea ("Dr. Maratea"). In August 2002, the candidates were interviewed for the position. Stephanie Abrams, Strategic Staffing Representative with Wyeth's Human Resources Department, interviewed each of the applicants and authored a Candidate Evaluation on each applicant on the day of their interviews. At the conclusion of the interviews, it was determined that Dr. Maratea would advance to the second round of interviews and she was ultimately offered the position.

In her capacity as Director QC AS&T, Dr. Maratea was Dr. Woghiren's supervisor. Dr. Maratea met with each of her reports on a weekly basis and took notes at each of those meetings, which she subsequently transcribed. Dr. Maratea soon began observing some deficiencies in Dr. Woghiren's work. Dr. Maratea spoke with Dr. Woghiren on several occasions about his substandard performance, but to no avail. On April 22, 2004, Dr. Maratea placed Dr. Woghiren on a Performance Improvement Program ("PIP"). The PIP is an internal Wyeth vehicle that formally notifies an employee of deficiencies in his/her performance. Pursuant to the PIP, Dr. Maratea met with Dr. Woghiren on a weekly basis, she assigned him objectives and advised him about ways to improve his performance. Dr. Maratea took notes and subsequently transcribed the notes of these PIP meetings. On April 23, 2004, Dr. Woghiren filed a claim of discrimination with the Massachusetts Commission Against Discrimination ("MCAD")

alleging that Wyeth discriminated against him on the basis of his race when it placed him on the PIP.

Dr. Woghiren seeks to preclude the admission into evidence of the following documents on the ground that they are hearsay not subject to any exception: 1) Zinma Khaw's Confidential Exit Interview Questionnaire and follow-up electronic mail message; 2) Stephanie Abrams' Candidate Evaluation of Dr. Woghiren dated August 16, 2002; 3) Dr. Woghiren's April 22, 2004 PIP authored by Dr. Maratea; and 4) Dr. Maratea's meeting notes and PIP notes authored on various dates relating to Dr. Woghiren.

## II. ARGUMENT

### A. Dr. Woghiren Cannot Object to the Admission into Evidence of the PIP Because He Made An Admission in His Amended Complaint That PIPs Were Business Records.

Dr. Woghiren seeks to preclude the admission into evidence of the PIP on the ground that it is inadmissible hearsay not subject to any exception. Exhibit 1. Contrary to Dr. Woghiren's assertion, the PIP is admissible both because he admitted as much in his Amended Complaint and because it fits squarely within the definition of a business records. In his Amended Complaint, Dr. Woghiren asserts in pertinent part:

> 46. Wyeth and Dr. Maratea placed Dr. Woghiren on a PIP for alleged substandard performance in his new duties and responsibilities, to which he was assigned less than sixty days prior.
>
> 47. While PIP's [sic] are frequently used by employers to attempt to improve employee performance, the PIP was employed by Wyeth to hide its illegal and discriminatory conduct.

Amended Complaint, p. 6. Exhibit 2.

3

The aforementioned excerpt is an admission by a party opponent pursuant to the provisions of the Fed. R. Evid. 801(d)(2).

Additionally, the PIP utilized by Wyeth is a business record and is an exception to the hearsay rule.  In *Petrocelli, et al., v. Gallison*, 679 F.2d 286 (1st Cir.1982), the Court upheld the exclusion of parts of a medical record that indicated that a patient's nerve had been severed, because there was no indication of where the information originated.  "To be admissible as "business records" under Rule 803(6), the referenced notations would have to represent either the opinions or diagnoses of the Massachusetts General Hospital doctors who made the notations or the diagnoses of some other "person with knowledge" (such as a medical colleague) who reported to the maker of the record as part of the usual business or professional routine of Massachusetts General Hospital."  *Id*. at 289.  The Court goes on to say that the Advisory Committee Notes make clear that [the right to make a notation in a business record] encompasses declarants . . . who report to the record keeper as part of a regular business routine in which they are participants.  Thus, while the PIP is admissible, the opinions of the individuals providing "unsolicited feedback" to which Dr. Maratea refers, albeit tangentially, are hearsay.  *See* Fed. R. Evid. 803(6).

In *United States of America v. Ferber*, 966 F.Supp. 90 (D. Mass. 1997), the Court discussed the indicia of reliability inherent in business records:  "[c]ourts admit hearsay statements which are grouped under Fed. R. Evid. 803 because of the supposed reliability of the out of court statements themselves.  One guarantee of that reliability is that the record was made in the course of a routine business practice."  *Id*. at 99.

> B.   The Other Contested Documents Are Also Exceptions to the Hearsay Rule Because They Either Constitute Business Records, Present Sense Impressions or The Author's Recorded Recollection.

In an attempt to achieve its mission, Wyeth has a policy of having all exiting employees complete a Confidential Exit Questionnaire ("the Questionnaire"). Zinma Khaw completed the Questionnaire on June 18, 2002. In it she candidly discussed difficulties she experienced while working with Dr. Woghiren. The Questionnaires are a business record because they are maintained in the regular course of Wyeth's business and it is Wyeth's practice to maintain these records. *See* Fed. R. Evid. 803(6). The next day, Ms. Khaw authored an electronic mail message to Gillian Pearlson in the Human Resources Department, in which she discussed additional problems she experienced while working with Dr. Woghiren. The subject of the electronic mail message is "Exit Interview follow-up." Ms. Khaw used the message to expand upon the points she made in the Questionnaire. Ms. Khaw intended her electronic mail message to be an addendum to the Questionnaire, for that reason, it should also be viewed as a business record. The close proximity in time to the completion of the two documents also lends itself to that conclusion.

Stephanie Abrams completed Candidate Evaluations after each of her interviews with the candidates for the Associate Director QC AS&T positions. As such, she completed a Candidate Evaluation on Dr. Woghiren. Exhibit 4. It was Wyeth's policy to complete a Candidate Evaluation on each candidate vying for a position at the scientist level and the evaluation of Dr. Woghiren should be admitted into evidence as a business record. Additionally, Ms. Abrams completed the Candidate Evaluation on the same day as Dr. Woghiren's interview and the close proximity to the interview and the recording of

5

her perceptions about the interviewee, enable it to also be construed as a recording of Ms. Abrams' present sense impression.  "A present sense impression, . . . , is admissible so long as it explains an event immediately after it happens.  Courts have recognized that the passage of a short amount of time will not preclude evidence otherwise admissible under Fed.R.Evid. 803(1)."  *United States v. Ferber,* 966 F.Supp. 90, 99 (D. Mass. 1997).  *See* Fed. R. Evid. 803(1).

Similarly, Dr. Maratea routinely met with each of her reports on a weekly basis, she took notes at those meetings and transcribed those notes.  Exhibit 5.  After Dr. Maratea put Dr. Woghiren on the PIP, she again met with him on a weekly basis and made notes of the PIP meetings.  Exhibit 6.  Both Dr. Maratea's pre-PIP meeting notes and her post-PIP meeting notes should be viewed as her recorded recollections of each of those meetings.  *See* Fed. R. Evid. 803(5).

### III.   CONCLUSION

Dr. Woghiren's admission that PIPs are utilized by employers to improve an employee's performance and thus maintained in the ordinary course of business, coupled with the above-cited case law provide ample justification for the Court's admission into evidence of the PIP dated April 22, 2004.  Additionally, the Questionnaire completed by Zinma Khaw and the addendum to Questionnaire, her exit interview follow up electronic mail message, are business records.  Further, Dr. Woghiren's Candidate Evaluation authored by Ms. Abrams is a business record and can also be considered a present sense impression of Ms. Abrams as it was authored on the day of the interview it purports to describe.  Finally, Dr. Maratea's pre-PIP notes and her post-PIP notes constitute her recorded recollection of each of her meetings with Dr. Woghiren.

Wherefore, for the foregoing reasons, Wyeth moves the Court to admit into evidence each of the aforementioned documents.

Respectfully Submitted,
**WYETH and WYETH BIOPHARMA**
By Their Attorneys:

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all counsel of record via hand delivery on this date.

/S/ Michael A. Fitzhugh
Michael A. Fitzhugh – BBO No. 169700
Sonia L. Skinner – BBO No. 631858
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

9/26/05          /S/ Sonia L. Skinner
Date              Sonia L. Skinner