UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEMENT WOGHIREN,<br>Plaintiff,<br><br>v.<br><br>WYETH and WYETH BIOPHARMA,<br>Defendants. | CIVIL ACTION NO. 04-12148 WGY |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Fed.R.Civ.P. 50(a), defendants Wyeth and Wyeth BioPharma (collectively referred to herein as "Wyeth") hereby move this Court for an Order granting a judgment as a matter of law in their favor on all the claims asserted in this action by the plaintiff, Dr. Clement Woghiren. As grounds for this Motion, Wyeth states that Dr. Woghiren has failed to do the following: establish a prima facie case of discrimination; meet his burden of proving that Wyeth's stated reason for his termination was a pretext, and further that the real reason for his termination was discrimination; and establish a prima facie case of retaliation. For the foregoing reasons, Dr. Woghiren's claims for discrimination and retaliation under M.G.L. c. 151B also fail. Wyeth is thus entitled to a judgment as a matter of law.

## ARGUMENT

### I. THE STANDARD UNDER RULE 50(a)

A motion for a judgment as a matter of law should be granted where the evidence, construed in a light most favorable to the plaintiff, is insufficient to support a verdict in his favor. The evidence must be such that "a reasonable person could be led to only one

conclusion, namely that the moving party is entitled to judgment as a matter of law." *Johnson v. Nat'l Sea Prods., Ltd.*, 35 F.3d 626, 630 (1st Cir.1994). No reasonable jury could return a verdict for Dr. Woghiren because of the paucity of evidence in support of his claims, even when construed most liberally. Judgment as a matter of law for Wyeth is therefore appropriate.

## II.     THE APPLICABLE ANALYSIS UNDER M.G.L. c. 151B

In order to evaluate an employee's discrimination claim under M.G.L. c. 151B, courts apply the three-step burden shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 804-805, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973). "Although created for use in Title VII cases, this framework is also applied when evaluating discrimination claims under Chapter 151B."*Benoit v. Technical Manufacturing Corp.*, 311 F.3d 166 (1st Cir.2003) citing *Mullin v. Raytheon Co.*, 164 F.3d 696, 699 (1st Cir.1999); see also *Lewis v. City of Boston*, 321 F.3d 207, 213-214 (1st Cir.2003) (employing the framework in analyzing a discrimination claim under Chapter 151B).

In *Benoit*, the employee, a black male of Haitian origin brought action against his employer for allegations of discrimination and retaliation on account of disability, race, color and national origin in violation of federal and state law. In that case, the First Circuit of the United States Court of Appeals applied the *McDonnell Douglas* burden shifting framework to both the federal and state claims. *Benoit v. Technical Manufacturing Corp.*, 311 F.3d 166, 173 (1st Cir.2003).

Similarly, in *Washington v. Milton Bradley Co.*, 340 F.Supp.2d 69 (D.Mass. 2004) (racial discrimination case arising out of both Title VII and M.G.L. c. 151B claims), the United States district court addressed the plaintiff's state and federal claims

together and "refer[red] principally to federal caselaw," noting that the "three-step analysis essentially parallels that applicable to chapter 151B." *Washington v. Milton Bradley Co.,* 340 F.Supp.2d 69, 75 (D.Mass. 2004); see *Fite v. Digital Equip. Corp.* 232 F.3d 3, 7 (1st Cir.2000) ("In our view, federal and Massachusetts law are now generally aligned... .") citing *Reeves* v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (U.S. 2000) and *Abramian v. President & Fellows of Harvard College*, 432 Mass.116-118 (2000). *See also Joyal v. Hasbro, Inc.,* 380 F.3d 14, 16 (1st Cir.2004) ("Massachusetts case law uses a burden-shifting device akin to federal law to force the employer to supply reasons for his action once an easily made *prima facie* case is established.").

Thus, although Dr. Woghiren's claim is asserted under Massachusetts, law the court should apply the federal standard established in *McDonnell Douglas* because the laws are congruent.

### III.  DR. WOGHIREN HAS FAILED TO PROVE A *PRIMA FACIE* CASE.

#### A.  Dr. Woghiren Has Failed to Prove That He Met Wyeth's Legitimate Performance Expectations, Or That He Was Replaced.

To recover on his disparate treatment claim, Dr. Woghiren must prove that he was the victim of "intentional" discrimination. *Udo v. Tomes,* 54 F.3d 9, 12 (1st Cir.1995), citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507 (1993). Where, as here, the plaintiff cannot offer "direct proof" of discriminatory animus, the Court will utilize the three-step paradigm of the familiar "burden shifting framework," that was first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and further explained in

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Thomas v. Kodak,* 18 F.Supp.2d 129, 135 (D.Mass.1998), *rev'd, Thomas v. Eastman Kodak*, 183 F.3d 38 (1st Cir.1999) (citing *Mulero-Rodriquez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996)).

This three-step analysis was adopted in *Said v. Pioneer Group, Inc.*, 2001 WL 1840909 (Mass.Super.Ct. Dec. 27 2001), where the terminated employee asserted a racial discrimination claim under 151B. The Massachusetts Superior Court set forth that in order to establish a *prima facie* case, the plaintiff must show:

1. he was a member of a racial minority;
2. he was doing his job acceptably;
3. he was terminated; and
4. he was replaced with a similarly qualified individual.

*Said v. Pioneer Group, Inc., supra,* No. 992247C, 2001 WL 1840909, 5, citing *Zhang v. Massachusetts Inst. Of Tech.*, 46 Mass.App.Ct. 597, 604 (1999). The specific elements of the *prima facie* case are flexible, and may be altered to fit the factual needs of the kind of discrimination allegedly at work in a given case. *Trustees of Health and Hospitals of the City of Boston, Inc. v. Massachusetts Com'n Against Discrimination*, No. 04-P-1036, 2005 WL 3489559 at *3 (Mass.App.Ct. Dec. 23, 2005); *See Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 41-45 (2005). Nevertheless, Dr. Woghiren must establish, by a preponderance of the evidence, every element of a *prima facie* case within the contours of his case. In the instant case, given that elements one and three have already been established as fact, Dr. Woghiren bears the burden of proving that he was doing his job acceptably and that he was replaced by a similarly qualified individual. *Id.*

4

According to the second stage of the "burden-shifting framework", if Dr. Woghiren can prove every element of the *prima facie* case of discrimination, the burden would then shift to Wyeth to produce a valid and nondiscriminatory reason for the dismissal. Once Wyeth produces a valid and nondiscriminatory reason, the final stage provides that the burden would shift back to Dr. Woghiren to show that the Wyeth's stated reason for his dismissal was false and but a pretext for discrimination. *Id.*, citing *Mulero-Rodriquez, supra,* 98 F.3d at 673 (citations omitted). Dr. Woghiren will not be able to establish a *prima facie* case because he cannot prove the second and fourth required elements. Even if he does somehow traverse this initial burden, Dr. Woghiren will be unable to establish the last stage of the three-tiered framework because he will be unable to show a connection between his termination and his membership in a protected class. *Thomas v. Kodak, supra* 18 F.Supp.2d at 137.

### 1. Dr. Woghiren Failed to Establish That He Was Performing His Job Acceptably.

In order to pass the first hurdle in the *McDonnell Douglas* framework for establishing a discrimination claim, Dr. Woghiren must prove every element of the *prima facie* case. He fails to do so for several reasons.

Firstly, Dr. Woghiren will not be able to prove that he performed his job as Principal Scientist acceptably, the second element of the *prima facie* case. Dr. Maratea, who is the Director of Quality Control, Dr. Woghiren's former supervisor and responsible for officially terminating his employment, observed and documented specific and repeated instances of Dr. Woghiren's performance deficiencies. Said deficiencies caused her to give him an evaluation of "3" [out of 5] for "meets expectations" for the calendar

year 2003. Thereafter, she continued to observe numerous performance deficiencies, verified by other colleagues of Dr. Woghiren, which led her to place him on the Performance Improvement Plan. He did not respond to the guidance and objectives rendered in the plan, but instead, grew increasingly insubordinate and intransigent in refusing to address and correct the issues she identified. Hence, Dr. Woghiren did not perform his job as Principal Scientist acceptably and will not be able to prove the second element of the *prima facie* case.

### 2. Dr. Woghiren Has Failed to Show He Was Replaced.

Dr. Woghiren has offered no proof whatsoever that he was replaced by a similarly qualified individual, the fourth element of the *prima facie* case. There has been no evidence offered on the issue of whether his former position as Principal Scientist has been filled by another individual, or even if Wyeth has sough to fill the position.

Dr. Woghiren may try to introduce authority showing that the fourth requirement of the *prima facie* case may be waived. Such courts reach this analysis with the justification that "circumstances giving rise to employment discrimination vary widely" and "the elements of a *prima facie* case must be elastic enough to be formulated to best fit the circumstances alleged. *McDonnell v. Certified Engineering & Testing Co.*, 899 F.Supp. 739, 746 (D.Mass. 1995) citing *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148 (1st Cir.1990). However, this "elasticity" in the rule is available in situations where "the employer had a continued need for 'someone to perform the same work after [the employee] left. *McDonnell v. Certified Engineering & Testing Co.*, 899 F.Supp. at 747. Again, in the instant case, no such evidence has been presented. In fact, the issue has been given no treatment in the plaintiff's case in chief.

Dr. Woghiren may argue that it is not essential for him to prove the fourth element in order to establish a *prima facie* case because other employees absorbed his duties. This argument would be misplaced, as mere redistribution of an employee's work among other existing employees already performing related work would not constitute replacement. *LeBlanc v. Great American Insurance Company*, 6 F.3d 836, 846 (1st Cir.1993).

In *LeBlanc*, the court held that a discharged employee is 'not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Id.* citing *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1457 (6th Cir. 1990) (citations omitted). Rather, "[an employee] is replaced only when another employee is hired or reassigned to perform plaintiff's duties." *Id.* Thus, merely because several employees continued to perform Dr. Woghiren's duties, such evidence is insufficient to satisfy the fourth element of the *prima facie* case.

Dr. Woghiren may then argue under the *McDonnell* analysis, where the court held that so long as there was a need for someone to perform the same work after the employee left, the fourth element may be satisfied. *McDonnell* at 747. The instant case is distinguishable from *McDonnell*. In his position as Principal Scientist, since Dr. Woghiren not only failed to adequately perform his duties, but also over-delegated his duties to other employees, he did not even perform much of his job at all. Thus, simply because others continue to perform his duties, it does not mean there was a "continuing need" for a employee in his designated position. Paradoxically, Dr. Woghiren has proven that his position of Principal Scientist was unnecessary for the proper function of the QC

7

AS&T group because it continues to work properly without him and without a replacement for him.

IV. **EVEN IF THE COURT WERE TO ASSUME THAT DR. WOGHIREN PROVED A *PRIMA FACIE* CASE, WYETH IS STILL ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

   A. **Wyeth's Reasons for Terminating Dr. Woghiren Were Valid and Not Motivated in Whole or in Part by any Unlawful Discriminatory Animus.**

Assuming for purposes of analysis that Dr. Woghiren is able to surpass this initial burden and establish a *prima facie* case. In such a hypothetical, the burden would then shift to Wyeth. If an employee establishes a prima facie case for discrimination it creates a presumption that the employer engaged in impermissible discrimination. *See, e.g., Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). "However, to rebut this presumption, the employer need only 'articulate a legitimate nondiscriminatory reason for the employee's termination.'" *Lawrence v. Northrop Corp.*, 980 F.2d 66, 69 (1st Cir.1992). The employer's obligation is simply one of production. '[T]he burden of persuasion remains [the employee's] at all times.' *Id.* citing *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (Mass. 1991); *Texas Dep't of Community Affairs* at 254.). "If a nondiscriminatory reason is set forth, the inference raised by the *prima facie* case disappears and the burden shifts back to [the employee.] *Id.*

Consequently, Wyeth will be able to shift the burden back to Dr. Woghiren from only an *articulation* of a nondiscriminatory reason. *Lawrence v. Northrop Corp.* at 69. Thus, Wyeth need not provide evidence but merely verbalize that it did not possess a discriminatory animus towards Dr. Woghiren. Wyeth has stated that Dr. Woghiren was

8

fired because he did not perform his job adequately, evidenced by numerous instances of inadequacy and his consequent placement on the Performance Improvement Plan. Wyeth will therefore meet the low threshold for rebuttal and the burden will shift back to Dr. Woghiren.

> **B. Dr. Woghiren Fails to Establish that Wyeth's Stated Reasons for His Termination were False and Merely a Pretext for Discrimination.**

Even if for purposes of analysis it was assumed that Dr. Woghiren could prove that Wyeth's stated reasons for his termination were false, he would still be unable to prove a nexus between his termination and discrimination. "At the third stage of the *McDonnell Douglas/Burdine* framework, the ultimate burden is on the [employee] to persuade the trier of fact that [he] has been treated differently because of [his] race." *Thomas,* 183 F.3d at 56; *Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 335 (1st Cir.1997). This burden is then broken down into two separate tasks. Dr. Woghiren must present sufficient evidence to show both that the Wyeth's articulated reason is a pretext, plus show that the true reason is discriminatory. *Thomas,* 183 F.3d at 56 (*citing Udo v. Tomes,* 54 F.3d 9, 13 (1st Cir.1995)). This test is utilized in First Circuit cases and has been termed the "pretext-plus" standard. *Thomas,* 183 F.3d at 56; *see, e.g. Mullin v. Raytheon Co.,* 164 F.3d 696, 699 (1st Cir. 1999). In *Thomas,* the "plus" prong was satisfied where the employee merely established that the possibility of an unconscious bias existed rather than provide direct evidence that the true reason for her termination was discriminatory. *Thomas,* 183 F.3d at 64-65.

In *Thomas,* the First Circuit reversed the district court's grant of summary judgment to the defendant. The First Circuit held that "[a] jury might reasonably infer

9

from [the employee's] description of the incidents that [her] race was an issue for [her employer] and that [her employer's] evaluations…were affected by some form of conscious animus or less conscious bias." *Thomas*, 183 F3d at 64. The facts of that case gave rise to the possibility that the employee was evaluated and terminated by a supervisor with a racially discriminatory bias. There, the employee was the only black customer service representative in the company so a jury "could infer from the evidence that she was also the only customer service representative that was treated unfairly." *Id*.

In *dicta*, the court noted that its "assessment of the evidence would be quite different if [the employee] had been one of several black employees supervised….some of whose [evaluation] scores were not low relative to those of the non-minority [employees.]" *Id*. This factual scenario applies to the present case. Here, Dr. Woghiren was one of several minority employees working in the QC AS&T group. In addition, evidence has been presented that shows that the evaluation scores of other minority employees are not low in relation to the scores of non-minority employees. Hence, this case must not be analyzed under the "unconscious bias" theory because it is distinguishable from *Thomas*. Since the QC AS&T group was largely comprised of employees who are members of a protected class and were treated equally in relation to their non-minority co-workers, Dr. Woghiren's claim will not succeed. He has been unable to provide any evidence whatsoever that Dr. Maratea exhibited any form of unthinking stereotypes and thus treated him any differently than his peers.

V.  **DR. WOGHIREN HAS FAILED TO OFFER SUFFICIENT EVIDENCE TO ESTABLISH HIS RETALIATION CLAIM.**

    A.  **Dr. Woghiren Has Failed to Put Forward Any Evidence That Would Allow the Trier of Fact to Determine That But For the Filing of His MCAD Complaint, Wyeth Would Not Have Terminated Him.**

Dr. Woghiren is unable prove that there is a causal link between his discrimination claim and his termination, which is required in order to succeed on a claim for unlawful retaliation. In order to recover, Dr. Woghiren must establish a *prima facie* case of retaliation, which involves proof by a preponderance of the evidence of the following elements:

1. the plaintiff engaged in protected activity by filing a complaint alleging race discrimination;

2. the defendants were aware of the filing of the complaint alleging race discrimination;

3. the defendants thereafter took an adverse employment action against the plaintiff [they terminated his employment]; and

3. but for the plaintiff's protected activity, the defendants would not have taken the adverse employment action [termination] against the plaintiff.

*Abramian v. President and Fellows of Harvard College, supra,* 432 Mass. at 121-122; *MacCormack v. Boston Edison Co., supra,* 423 Mass. at 662-63.

Dr. Woghiren's argument lacks sufficient evidence to show that "but for the filing and pursuing of his original discrimination claim the adverse reaction [his termination], would not have been taken by [Wyeth.]" *MacCormack v. Boston Edison Co.,* 423 Mass. 652, 662, 672 N.E.2d 1, 7-8 (1996). Dr. Woghiren cannot prove that [he] reasonably and

11

in good faith believed that [Wyeth] was engaged in wrongful discrimination, that [he] acted reasonably in response to [his] belief, and that [Wyeth's] desire to retaliate against [him] was a determinative factor in its decision to terminate [his] employment." *Abramian v. President and Fellows of Harvard College, supra,* 432 Mass. at 121, citing *Tate v. Department of Mental Health,* 419 Mass. 356, 364 (1995).

Dr. Woghiren established a pattern of poor work performance that was observed by Dr. Maratea and other employees at Wyeth long before he filed his discrimination claim. The mere fact that one event followed another is not sufficient to make out a causal link. *Prader v. Leading Edge Prods., Inc.,* 39 Mass.App.Ct. 616, 617 (1996) (insufficient evidence for causal link in retaliation claim where employee who filed sexual harassment claim to police could not prove nexus between termination and filing of police report).

In *Prader*, "the defendant's reason for firing the plaintiff was buttressed by a written performance evaluation by the plaintiff's immediate supervisor" and stated that the employee needed improvement in several areas of performance. As such, the plaintiff failed to meet her burden of demonstrating a causal link between her discharge and [her claim]. *Id.*

Likewise, Dr. Woghiren received numerous unsatisfactory written performance evaluations before he was terminated. Simply because he was fired shortly after he filed his claim for discrimination, Dr. Woghiren cannot assert there is any causal relationship between the two events. Thus, he fails to establish a *prima facie* case for retaliation and cannot succeed on this claim.

## CONCLUSION

**Wherefore**, Wyeth moves that this Court grant its Motion for Judgment as a Matter of Law.

**WYETH And WYETH BIOPHARMA**
By Its Attorney,

_____
Michael A. Fitzhugh, Esq. BBO# 169700
**FITZHUGH, PARKER & ALVARO LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
Tel: (617) 695-2330

Dated: January 9, 2006