UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEMENT WOGHIREN, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>WYETH and WYETH BIOPHARMA, )<br>Defendants. )<br>) | CIVIL ACTION NO. 04-12148 WGY |

**DEFENDANTS' BENCH MEMORANUDM ON JURY INSTRUCTIONS**
**CONCERNING UNCONSCIOUS RACIAL BIAS DOCTRINE**

Pursuant to Fed.R.Civ.P. 51, the defendants, Wyeth and Wyeth BioPharma (collectively referred to herein as "Wyeth"), request that this Court reconsider its intention to instruct the jury on the issue of "subconscious bias," and not give any such instructions for the reasons set forth in Part I, below.  In the alternative as set forth in Part II, Wyeth requests that if the court does give such instructions, it clarify the definition of "unconscious bias."  More specifically, Wyeth requests the Court to explain to the jury that an unconscious bias can only be found if there has been some sort of outward manifestation of behavior that would support the existence of a racial bias.

**ARGUMENT**

I.   **THE INSTANT CASE IS PREMISED UPON A THEORY OF DISPARATE TREATMENT, WHEREAS THE UNCONSCIOUS BIAS DOCTRINE INCONSISTENT WITH A DISPARATE TREATMENT ANALYSIS.**

In *Jackson v. Harvard Univ.*, 721 F.Supp. 1397 (D.Mass. 1989), a sex discrimination case, the court did not follow the unconscious bias theory.  The case was

tried without a jury over an eight-day period and Judge Woodlock's Memorandum of Decision held that evidence was insufficient to establish that plaintiff was denied tenure because of her sex. *Id.* at 1399. Instead of following the unconscious bias theory, the court stated that "disparate treatment analysis is concerned with intentional discrimination, not subconscious attitudes." *Id.* at 1432. The plaintiff, Barbara Jackson, was a female faculty member at the Harvard Business School who failed on two occasions to convince a critical mass of the tenured faculty that she should be admitted to tenured status. Since she lacked the critical mass support, defendant Dean McArthur did not support her candidacy and she did not receive tenure status. *Jackson*, 721 F.Supp. at 1399.

Jackson wanted the unconscious bias theory utilized because she believed she was "held to a higher standard, and thus that the defendants' articulated reason for her tenure denial was a pretext for sex discrimination. *Jackson*, 721 F.Supp. at 1436. The court referenced *Sweeney v. Board of Trustees of Keene State College,* 604 F.2d 106 (1st Cir.1979), which stated that "[o]ne familiar aspect of sex discrimination is the practice, whether conscious or unconscious, of subjecting women to higher standards of evaluation than are applied to their male counterparts." *Sweeney*, 604 F.2d at 114.

However, the *Jackson* court held that the employee "failed to prove directly, circumstantially, or by a combination of both that the decision to deny her tenure was affected in any fashion by gender discrimination." *Jackson*, 721 F.Supp. at 1443. The reasons for denial of tenure were sufficient because the "decision was the result of a determination by a significant portion of the tenured faculty that Ms. Jackson lacked

2

sufficient qualities of creativity to justify extending a tenured appointment to her." *Id.* Further, the court held that "pronouncements by plaintiff and her supporters that she was qualified for tenure, even more qualified than tenured males, may [have been] true, but they do not constitute evidence of sex bias. *Id.*

Dean Donaldson, who was also in charge of the appointment review process and tenure decisions, helped establish a process at the Harvard Business School that was neutral to both race and gender. *Id.* at 1433.  Even so, he commented that "subconscious stereotypes and prejudices' held by some of the Business School's tenured faculty members" may not have been eliminated. *Id.*  "[H]owever, those subconscious attitudes that may well remain are precisely the sort that a disparate treatment analysis cannot and was never designed to police." *Id.*, Audrey J. Lee, *Unconscious Bias Theory in Employment Discrimination Litigation*, 40 Harv. C.R.-C.L. L. Rev. 481, 489 n.53 (2005).

This is analogous to Dr. Woghiren's belief that he should not have been terminated because he subjectively felt that he was performing his job adequately.  In accordance with the analysis of *Jackson*, merely because he was terminated because of poor performance, there is no proof of racial bias.  Hence, the jury should not consider that Dr. Maratea and/or Wyeth had an unconscious racial bias against Dr. Woghiren unless there is some evidence to support that they held this type of bias. *Jackson v. Harvard Univ.*, 721 F.Supp. at 1432.

      **II.**     **COURTS HAVE UTILIZED THE UNCONSCIOUS BIAS THEORY PRIMARILY WHERE EMPLOYERS HAVE DEMONSTRATED OUTWARD MANIFESTATIONS OF AN UNCONSCIOUS BIAS.**

3

The Court intends to instruct the jury that they must determine whether or not Wyeth terminated Dr. Woghiren because of race discrimination, either due to a conscious or unconscious bias. Wyeth believes this charge is overbroad as a jury needs further guidance as to what constitutes an "unconscious bias." The existence of an "unconscious bias" should be found by the jury only when there has been some outward expression or action to reflect it. Otherwise, the jury will have absolutely no basis on which to determine whether there actually existed an unconscious bias or not because it would be impossible to do so. As a result, this would be highly prejudicial to Wyeth.

In *Thomas v. Eastman Kodak Co.,* 183 F.3d 38 (1st Cir.1999) (race discrimination claim), the First Circuit stated that "[t]he ultimate question is whether the employee has been treated disparately 'because of race.' This is so regardless of whether the employer consciously intended to base the evaluations on race or simply did so because of unthinking stereotypes or bias.'" *Thomas,* 183 F.3d at 58. The court held that unconscious biases or stereotypes should be considered where the employer presented evidence of "incidents and situations which suggest [the employer] had a general disregard for [the employee's] professional abilities and status" despite several years of high performance appraisals. *Id.* at 64. Such incidents included times where the employer was "inappropriately upset or angry with [the employee], to the point of behaving unprofessionally." *Id.* In the instant case, Dr. Woghiren has not presented evidence of any similar outward demonstration of racial bias on the part of Wyeth or Dr. Maratea that would give rise to an unconscious bias.

Courts decided after *Thomas* have followed this analysis. It appears that only in situations where there is either some action or statement that would indicate the possibility of a bias, the unconscious bias analysis is employed.

In *Rossiter v. International Business Machines Corp.*, No. 04-10069, 2005 WL 2722929 (D.Mass. Oct. 24, 2005), the discharged employee alleged age discrimination when he was laid off.  Citing *Thomas*, the court recognized that "intentional discrimination does not require conscious discrimination. Employment decisions based on unconscious, stereotypical thinking are no less 'injurious or worthy of eradication than blatant or calculated discrimination.'" *Id.* at *7 n.10 (*citing Thomas*, 183 F.3d at 60). However, the district court granted summary judgment to defendants nonetheless because the employee failed to establish any "direct or circumstantial evidence of a discriminatory animus held by [his employer.]" *Rossiter*, No. 04-10069, 2005 WL 2722929 at *14.

In *Lipchitz v. Raytheon Co.*, 434 Mass. 493 (2001) (gender discrimination claim) a jury returned a verdict for plaintiffs in Superior Court. On direct appellate review, the Supreme Judicial Court vacated and remanded the case to the Superior Court for a new trial, holding that the jury instructions, when considered on the whole, constituted reversible error. *Id.* at 503.   At trial, in response to a special question, the judge instructed the jury that an actual motive to discriminate required a "conscious motive toward gender bias." *Id.* at 503.  Although advisory, the Supreme Judicial Court found this instruction to be in error and noted that "[e]mployment decisions that are made *because of* stereotypical thinking about a protected characteristic or members of a protected class, whether conscious or unconscious, are actionable under G.L. c. 151B." *Id.*  As such, the court held that "[t]he judge should have instructed that [the employee]

5

was required to prove that [her employer] acted with a discriminatory intent, motive or state of mind." *Id.* at 504. *Lipschitz* further explained that "discriminatory intent, motive or state of mind" may be "satisfied by circumstantial evidence, such as the inference of discriminatory animus that may be drawn from proof that one or more of the reasons advanced by the employer is false." *Id.*

The instant case is distinguishable from *Lipchitz*. In *Lipchitz*, there were outward expressions of gender bias, such as derogatory statements relating to the employee's sex, whereas no evidence of outward expressions of racial bias against Dr. Woghiren was presented. *Id.* at 497.[1] In *Lipchitz*, there existed ample circumstantial evidence in the form of records kept in the employee's desk diary that documented disagreements with various managers and supervisors over the years. *Id.* Conversely, in the present case, there is no circumstantial evidence to infer a discriminatory animus or demonstrate that Wyeth and/or Dr. Maratea acted with a discriminatory bias towards Dr. Woghiren.

## CONCLUSION

For all of the foregoing reasons, Wyeth supplements its jury instructions to include an explanation of the term "unconscious bias" and requests that this Court grant the requested relief.

**WYETH And WYETH BIOPHARMA**,
By Their Attorneys,

---

[1] The employee's manager had, on at least one occasion referred to her as a "big-breasted Martha" and a "bitch." *Lipchitz.*, 434 Mass. at 497.

6

_____
Michael A. Fitzhugh, Esq. BBO#169700
Kristin E. Spriano, Esq. *Pro Haec Vice*
**FITZHUGH, PARKER & ALVARO, LLP**
155 Federal Street, Suite 1700
Boston, MA 02110-1727
(617) 695-2330

Dated: January 11, 2006

## Certificate of Service

    I hereby certify that a copy of the foregoing was served upon opposing counsel of record, John Tocci, by hand delivery on January, 11, 2006.

_____
**Michael A. Fitzhugh**
